65 So.2d 56 (1953)
WILLIAMS
v.
CITY OF GREEN COVE SPRINGS.
Supreme Court of Florida, en Banc.
April 28, 1953.
Will O. Murrell and Wm. O. Murrell, Jr., Jacksonville, for appellant.
Thomas J. Rivers, Green Cove Springs, for appellee.
*57 PER CURIAM.
We find no showing of a right to relief against the defendant below. Therefore the judgment appealed from is affirmed upon authority of Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049; Lewis v. City of Miami, 127 Fla. 426, 173 So. 150. Upon the question whether the words "any corporation" used in section 768.01, F.S.A., include Municipal Corporations see City of St. Petersburg v. Carter, Fla., 39 So.2d 804.
THOMAS, SEBRING, MATHEWS and DREW, JJ., concur.
ROBERTS, C.J., and TERRELL and HOBSON, JJ., dissent.
TERRELL, Justice (dissenting).
Pursuant to Chapter 768.01, F.S.A., Gladys Williams sued the City of Green Cove Springs to recover damages for the wrongful death of her husband, Willie Henry Williams. The complaint alleged that the city "did carelessly, recklessly and negligently cause, suffer and allow the said Willie Henry Williams to remain confined in the said jail during the burning of said jail by fire of undetermined origin, so that, thereby, the said Willie Henry Williams, who was then and there the lawful husband of the plaintiff as aforesaid, did perish and die in the said fire." It is further alleged that on account of said negligence the plaintiff was deprived of the care, companionship and consortium of her husband, that she was deprived of his earnings and has suffered great physical and mental pain. A motion to dismiss the complaint was granted and the plaintiff has appealed.
The point for determination is whether or not the City of Green Cove Springs, a municipal corporation, may be required to respond in damages for the wrongful death of a prisoner who perished in a fire of undeterminate origin which consumed the city jail in which said prisoner was confined.
The city contends that this question requires a negative answer because the administration of a municipal jail is a governmental function and that the city is not liable in damages for acts resulting from its negligent operation. This appears to be the theory on which the trial court held that the complaint failed to state a cause of action. It is also the theory on which the majority of this court has affirmed the order of the trial court dismissing the complaint. Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049, Lewis v. City of Miami, 127 Fla. 426, 173 So. 150 and City of St. Petersburg v. Carter, Fla., 39 So.2d 804, are relied on to support this conclusion.
I recognize the rule of nonliability of a municipality for tort resulting from the performance of purely governmental functions, but I cannot bring myself to believe that when a city takes one in custody, incarcerates him in jail, and negligently permits the jail to burn and the prisoner to perish, it is exercising a strictly governmental function so as to exempt it from liability for negligently administering said function. There must be a point where governmental function ends and negligence begins. I do not think the cases relied on in the majority opinion are in point with or can be said to rule the case at bar. Elrod v. City of Daytona Beach had to do with a claim for damages resulting from the enforcement of an alleged unconstitutional city ordinance. Lewis v. City of Miami limits the rule of nonliability for tort resulting from the performance of a governmental function to those cases in which the city acts as an agency of the state for purely governmental purposes. It must not be overlooked, however, that the court imposed liability on the city for failure to segregate prisoners confined in jail where one was infected with a venereal disease and communicated it to another prisoner. St. Petersburg v. Carter treated the question of whether or not the word "corporation" used in Section 768.01, F.S.A., Wrongful Death Statute, included municipal corporation.
In the case at bar we are confronted with a claim for damages on account of permitting one confined in the city jail to perish in a fire that burned the jail, the said burning alleged to have been caused by negligence of the city. One of the first lessons we learned in the law school was *58 that for every wrong there is a remedy. Section 4, Declaration of Rights, provides that "All courts in this state shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered with out sale, denial or delay."
If no other remedy was available to appellant I do not think it would be a distortion of the law to hold that the quoted provision of the Declaration of Rights is self-executing and would afford a remedy in a case like this, but I do not think such a holding is necessary. I think when a governmental function is performed in a negligent manner, as alleged here, the municipality may be held liable. Ide v. City of St. Cloud, 150 Fla. 806, 8 So.2d 924; Lisk v. City of West Palm Beach, 160 Fla. 632, 36 So.2d 197.
The last cited cases have to do with negligent acts in the performance of charter powers authorized in the interest of the public, but in principle they are not materially different from Maxwell v. Miami, 87 Fla. 107, 100 So. 147, 33 A.L.R. 682, City of Tallahassee v. Kaufman, 87 Fla. 119, 100 So. 150 and Barth v. Miami, 146 Fla. 542, 1 So.2d 574, wherein the city was held liable for negligently operating a fire truck. Edwards v. City of Pocahontas, 4 Cir., 47 F. 268, was a case in which the city was held liable for negligently permitting its jail to become so filthy and unsanitary that the plaintiff was infected with a communicable disease. Certainly, if the city can be held liable for negligently letting its jail become unsanitary so that it spreads a communicable disease, it should be held liable for negligently permitting it to be burned and thereby consuming the life of a prisoner.
This court has never attempted to lay down a hard and fast rule delineating purely governmental functions. An examination of the cases cited herein discloses that the city may claim immunity from tort actions if it is faithfully following statutory or charter provisions in the execution of purely governmental functions, but even when performing such functions, if it acts negligently and wrongs one of its citizens, it cannot claim immunity from its wrong. Governmental immunity is not a cloak or refuge in which the municipality may ward off every species of negligence. There is no basis in reason for holding the city liable for the negligent operation of its fire truck or for negligently operating its jail so that an inmate is infected with a communicable disease and then give it the brush off when it negligently permits its jail to burn and consumes the life of a prisoner. To contend that such an injury must be laid to the cause which occasioned the prisoner's confinement, or that it is an incident thereto, is without any basis whatever in reason or justice.
It is true that this court has not previously been confronted with a suit for damages for the negligent death of a prisoner confined in the city jail, but a study of the cited cases reveals that we have approached controversies in which the question of nonliability for tort was raised in the light of justice and reason and not adjudicated them on the basis of outworn cliches that are devoid of either.
I think the doctrine of the last cited cases could very appropriately be extended to the case at bar, and in justice I think they should be. For this reason I dissent from the majority opinion.
HOBSON, J., concurs.
HOBSON, Justice (dissenting).
This suit originated in the Circuit Court in and for Clay County as a common-law action brought under the so-called wrongful death statute, Section 768.01, F.S.A., against the City of Green Cove Springs, Florida. The plaintiff below (appellant herein) charged in her complaint that the municipality permitted her husband, who was on or about the 24th day of February, 1950, confined in the city jail, to be burned to death as a result of the city's negligence in failing to remove him from said jail during a fire which was of undetermined origin.
Counsel for the City of Green Cove Springs filed a motion to dismiss upon the ground that the complaint failed to state a cause of action. In support of this motion *59 counsel contended that the operation of the jail was a governmental function and that under our ruling in many cases a city while acting in a governmental, as distinguished from a proprietary, capacity cannot be sued in tort for the negligence of its officers or employees. The lower court sustained the motion to dismiss and this appeal ensued.
The sole question presented for our determination turns upon the proper construction to be given section 768.01, supra. The real query is whether the words "any corporation" which are used twice in the statute include a municipal corporation. We have never before been faced squarely with the necessity of construing section 768.01, supra, although we have held many times that a city is immune from a suit sounding in tort if the alleged negligent act of the officer or employee of the municipality was committed while he was engaged in performing a duty which was strictly governmental in character. On the threshold we deem it appropriate to observe that under the common law no action was maintainable which sought to recover damages for the death of a human being occasioned by the negligence or wrongful act of any other person whether acting on his own account or as the employee of another.
It is contended by counsel for appellee that we should follow the general rule which we stated and approved in the case of City of St. Petersburg v. Carter, Fla., 39 So.2d 804, 805, to the effect "that the word `corporations' does not include municipal corporations unless they are either expressly included by apt words or there is a clear unmistakable intention that they be included."
We found it proper to invoke said rule in that case because we observed that in the statute then under consideration the word "corporations" was used along with other words which connote private enterprise and it was, therefore, clear that the legislature had private corporations only in mind when it enacted Section 350.10, F.S.A. We further stated that the legislative intent, if not expressed in apt words, should be "gathered from the purpose of the act, the administrative construction of it, other legislative acts bearing upon the subject, and all the circumstances surrounding and attendant upon it."
The primary, if not the exclusive, premise for our decisions invoking the rule of nonliability of a city for its torts in cases wherein its officers and employees were performing governmental functions is that the sovereign is immune from suit unless such immunity is waived. We have frequently referred and adhered to this pronouncement and have gone so far in extending it as to suggest that an officer or employee of a city, if his act be one consequent upon performance of a governmental function, is not actually the servant or agent of the city but of the public and that the rule of respondeat superior cannot be applied.
It is my view that in a case of the type now under consideration it is proper, if not compulsory, that we construe the words "any corporation" as used in section 768.01, supra, to include a municipal corporation. The theory that a city employee when performing duties which are governmental in character is acting for the public generally and not for the city, although it employed him and assigns him to and directs his work, if carried to its logical conclusion, would likewise exempt the employee from personal liability. If he be decreed to be the servant of the public then he is acting for and in the place and stead of all the people who are inhabitants of the city and should not be answerable for his tortious conduct any more than the city should be, unless he is guilty of "stepping aside" and committing a tort which cannot be catalogued as being within the scope of his authority, express or implied, or, in other words, an act which could not have been anticipated or foreseen by the employer (the city, or the public which he and it represent). The end result would be that even a widow, as in this case, would find herself in the unthinkable position of having an injury done her by virtue of the wrongful death of her husband and no means or remedy afforded to her "by due course of law" for redress. Such a situation would offend one of the fundamental principles of our concept of government *60 as declared in section 4 of our Declaration of Rights:
"All courts in this State shall be open, so that every person for any injury done him in his lands, goods, person or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay."
Consequently, it is my opinion that the words "any corporation" as used in section 768.01, supra, should be held to include a municipal corporation.
It does not square with my concept of simple justice to hold that if a man should suffer an injury or lose his leg or other member, as a result of the city's negligent failure to maintain its streets or sidewalks in a reasonably safe condition, he might secure a judgment against the municipality, while, on the other hand, if he should lose his life by being burned to death in a city jail because of the negligence of the jailer in incarcerating him in said jail and leaving him there over night unattended, his widow could not maintain an action against the city.
Moreover, I do not believe that the legislature intended to exclude a municipal corporation when it used the words "any corporation" in section 768.01, supra, because when it originally enacted said statute in 1883 it knew of the existence of section 4 of our Declaration of Rights. On the other hand, it was not then aware of our adoption in the case of City of St. Petersburg v. Carter, supra, of the general rule that the word "corporations" does not ordinarily include municipal corporations unless the legislative intent to include municipal corporations is expressed in apt words or necessarily implied by a consideration of all the circumstances surrounding and attendant upon its passage. Furthermore, this rule of construction does not destroy the well recognized principle that the legislative intent, if not crystal clear from the language used, should be gleaned upon a consideration of the subject matter, the purpose and all other relevant matters. Sparkman, Tax Assessor v. State ex rel. Bank of Ybor City, 71 Fla. 210, 71 So. 34. This Court has held that where possible a statute will not be construed so as to lead to evil, unjust, oppressive, or absurd consequences or to self-contradiction. Curry v. Lehman, 55 Fla. 847, 47 So. 18; City of Miami v. Romfh, 66 Fla. 280, 63 So. 440. Certainly we should not give a construction to the statute which would not only result in oppression and injustice but would also do violence to the letter as well as the spirit of section 4 of the Florida Declaration of Rights.
Not only does section 4 of our Declaration of Rights compel the construction which I would place upon section 768.01, supra, but if there were no such statute it is my view that Section 4, supra, would in and of itself require that the courts entertain an action of the type now under consideration whether the wrongdoer be an individual, a group of individuals or a private or municipal corporation regardless of the fact that such an action was unknown to the common law. We should never lose sight of the fact that although we adopted the common and statute law of England as of July 4, 1776, we established as the supreme law of this State our Constitution and Declaration of Rights.
As has been previously stated, under the common law no action could be maintained for "wrongful death." Consequently, unless the words "any corporation" used in section 768.01, supra, include a municipal corporation no action can be maintained in this State to recover damages for the death of a human being brought about by the negligence or wrongful act of any city employee even though he be performing duties in connection with a proprietary or ministerial function of a municipality. Yet, in the case of Ballard v. City of Tampa, 124 Fla. 457, 168 So. 654, we held that the city was liable for the death of a prisoner of the city caused by the negligent or wrongful act of the city's agent in superintending prisoner's work in working out sentence on the city streets. Since the common law does not provide for an action for wrongful death, the only basis for our decision in Ballard v. City of Tampa, supra, was sections 7047-7048 G.G.L., now section 768.01, F.S.A. In the last cited case we definitely held by necessary implication that *61 the legislature intended to include a municipal corporation when it used the words "any corporation" in our wrongful death statute. To my mind, it is wholly inconsistent and illogical to hold that the words "any corporation" include a municipal corporation if the wrongful death is occasioned by the negligence of a city employee while engaged in a function which the city was performing in a proprietary capacity through said employee and at the same time hold that the words "any corporation" do not include a municipal corporation if the wrongful death was brought about by the negligence of a city employee while working on a municipal project governmental in character. The statute does not provide for, or even suggest, any such distinction.
I seriously doubt that a bereaved widow (or any other surviving dependent for that matter) can appreciate the justice of the law which says in effect you cannot be compensated by due course of law for the injury done you because your departed loved one upon whom you were dependent met his death by virtue of the wrongful, negligent act of a public, rather than a private, servant.
It is clear that section 768.01, supra, was enacted for the purpose of supplementing the common law in such manner as to permit an action for wrongful death which was not in any event or under any circumstances maintainable under the common law and I see no reason for imputing to the legislature an intention to exclude municipal corporations from the impact of said statute.
In this case it is my opinion that the action should be held to be maintainable; that the doctrine of respondeat superior should be invoked and that a jury should determine whether the jailer was acting within the scope of his apparent authority or whether his conduct was a "stepping aside" or something which might not have been anticipated or foreseen by the employer (the city). See Weiss v. Jacobson, Fla., 62 So.2d 904.
I would reverse this case for further proceedings. For a more detailed analysis of the author's views with reference to the rule of municipal nonliability for its torts when performing governmental functions see his special concurring opinion in the City of Miami v. Bethel, Fla., 65 So.2d 34.