116 So.2d 421 (1959)
TAMIAMI GUN SHOP, a Florida Corporation, Petitioner,
v.
Raymond KLEIN, a Minor, by His Father and Next Friend, Sidney B. Klein, and Sidney B. Klein, Individually, Respondents.
Supreme Court of Florida.
December 16, 1959.
Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell and M.R. Adkins, Miami, for petitioner.
Dubbin, Schiff, Berkman & Dubbin and Phillip Goldman, Miami, for respondents.
HOBSON, Justice.
We granted a petition for writ of certiorari pursuant to Section 4, Article V, of the Constitution, F.S.A., to determine whether or not a decision of the District Court of Appeal, Third District, is in direct conflict with former decisions of this court. Petitioner directed our attention principally to the cases of Turner v. Seegar, 1942, 151 Fla. 643, 10 So.2d 320; Vandencar v. David, Fla.App. 1957, 96 So.2d 227, 66 A.L.R.2d 912; and Deane v. Johnston, Fla. 1958, 104 So.2d 3, 65 A.L.R. 2d 957.
The facts of this case are relatively simple. This is a personal injury action in which the respondents sued the petitioner to recover damages caused when the respondent minor was injured by the discharge of the rifle sold to him by the petitioner. The petitioner sold a 30/30 magazine-fed, lever-action Winchester Model 94 rifle to the respondent, who was in fact on the date of purchase sixteen years, two months old. Prior to the time of purchase the petitioner asked the minor his age and received a reply from the respondent and his "buddies" that he was *422 over eighteen. The sale was consummated when the respondent traded his "Mossberg" .22 for the 30/30.
The injury occurred on a return from target practice in the Everglades when the car in which the respondent was riding struck a severe bump in the road, and the rifle which the respondent was holding by the barrel discharged causing the loss of his thumb. Respondent's loss of the thumb on his right hand and the attendant disability naturally associated with such a loss were the only injuries sustained. The respondent admitted he knew the gun was loaded. There is considerable evidence of record that the respondent minor was well experienced in the handling of firearms.
The complaint sought to hold the petitioner liable on the ground that the sale to the respondent, an obvious minor, was negligence per se because it violated § 790.18, Florida Statutes, F.S.A., as well as Ordinance No. 5325 of the City of Miami. It was the respondent's contention that the violation of these penal laws was the sole proximate cause of the minor's injury. Said laws read as follows:
Section 790.18, Florida Statutes, F.S.A., reads:
"790.18 Selling arms to minors by dealers.  It is unlawful for any dealer in arms to sell to minors any pistol, springfield rifle or other repeating rifle, bowie knife or dirk knife, brass knuckles or sling shot, and every person violating this section shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of fifty dollars or by imprisonment in the county jail not more than six months." (Emphasis supplied.)
The material portions of Ordinance No. 5325, City of Miami, read:
"Be It Ordained By The Commission of The City of Miami, Florida:
"Section 1. It shall hereafter be unlawful for any person to sell, barter, lend, give or deliver any pistol, dirk, or other deadly weapon to any minor under seventeen (17) years of age.
"Section 2. It shall hereafter be unlawful for any person to sell, barter, lend, give or deliver any pistol, dirk, or other deadly weapon to any minor between the ages of seventeen (17) and twenty-one (21) years of age without the express written approval of one of the parents of such a minor or legal guardian." (Emphasis supplied.)
The petitioner's answer affirmatively alleged the injury was caused by the minor's contributory negligence. The lower court granted respondent's motion to strike petitioner's affirmative defense of contributory negligence. After receiving extensive depositions, the lower court also granted respondent's motion for final summary judgment on the question of liability.
After a trial on the question of damages, the jury granted damages to the respondent minor in the sum of $36,250, and to respondent minor's father in the sum of $2,500.
On appeal the District Court affirmed the lower court on the theory that the statute and city ordinance involved here were intended to protect the class of persons in which the plaintiff is included against the risk of the type of harm which did, in fact, occur. It was the court's opinion that an unexcused violation of said laws is negligence in itself and not merely evidence of negligence. As stated by the court, "The effect of law is to stamp the defendant's conduct as negligence, with all of the effects of common law negligence." The result of the adoption of such a rule of law was a holding that the defense of contributory negligence was properly stricken as it was not available to the defendant under the circumstances presented in this case.
As we proceeded with our analysis of the problem herein involved, we became initially concerned with the possibility that the District Court's decision might also be *423 in direct conflict with a long line of cases, culminating with Bryant v. City of Tampa, Fla.App. 1958, 100 So.2d 665, in which the courts of this state have held that violation of a traffic law is merely prima facie evidence of negligence.[1]
Our research discloses that the almost universal American and English attitude is that where legislation prescribes a standard of conduct for the purpose of protecting life, limb, or property from a certain type of risk, and the harm to the interest sought to be protected comes about through breach of the standard from the risk sought to be obviated, then the statutory prescription of the standard will at least be considered in determining civil rights and liabilities. The authorities divide, however, on the effect to be given the statute. There are two main lines of decisions. Probably a majority of American courts have adopted the rule that the unexcused violation of such a statutory standard is negligence per se, that is, negligence as a matter of law (to be ruled by the court). On the other hand, in a substantial number of jurisdictions such a violation is held to be merely evidence of negligence to be weighed by the jury.[2]
In spite of this difference of judicial opinion, there appears to be one area wherein most authorities agree on the effect of the violation of the statute or ordinance. In considering this group of unusual and exceptional statutes, the courts usually find a legislative intent to remove the defense of contributory negligence. Such statutes have been construed to place the entire responsibility upon the defendant, and to require him to protect not only plaintiffs who are exercising reasonable care but those who are contributorily negligent as well.
Typically considered within this narrow classification are those cases involving child labor acts. Said acts are found to be intended to place all responsibility upon the employer, so that he is liable for injury to the child even though he has acted in good faith and has employed the infant in ignorance of his age. To this extent they impose strict or absolute liability. It has been held that the evident purpose of the statute would be defeated if the employer were permitted to set up the contributory negligence of the child, and that the legislature must be taken to have intended that no such defense should be available.[3] Statutes prohibiting the sale of firearms and similar dangerous articles to minors[4] are held, for obvious reasons, to stand on the same footing as are acts requiring precautions for the protection of intoxicated or unusually ignorant people.
It is such decisions that have led the Restatement of Torts to state the principle as follows:
"If the defendant's negligence consists in the violation of a statute intended to protect a class of persons from their inability to exercise self-protective care, a member of such class is not barred by his contributory negligence from recovery for bodily harm *424 caused by the violation of such statute."[5]
A careful reading of the District Court's opinion, written by Judge Wigginton, discloses that he correctly determined the legislative enactments violated by the petitioner came within the purview of the above stated rule.
When we examine the cases alleged to be in direct conflict within the context created by these exceptional statutes, it is clear that they are distinguishable and fall far short of the requisite direct conflict necessary to activate our jurisdiction. This being the result of our inquiry, we can do no more than approve Judge Wigginton's well considered opinion.
The writ of certiorari is discharged.
THOMAS, C.J., and TERRELL, DREW and THORNAL, JJ., concur.
NOTES
[1] Allen v. Hooper, 1936, 126 Fla. 458, 171 So. 513; Gudath v. Culp Lumber Co., Fla. 1955, 81 So.2d 742, receding from Gosma v. Adams, 1931, 102 Fla. 305, 135 So. 806, 78 A.L.R. 1193; Clark v. Sumner, Fla. 1954, 72 So.2d 375; City of Tallahassee v. Ashmore, 1946, 158 Fla. 73, 27 So.2d 660.
[2] For citation of authorities on both sides, see Harper and James, The Law of Torts, Vol. 2, § 17.6, p. 997 (1956).
[3] Tampa Shipbuilding & Engineering Corporation v. Adams, 1938, 132 Fla. 419, 181 So. 403, 893.
[4] Pizzo v. Wiemann, 1912, 149 Wis. 235, 134 N.W. 899, 38 L.R.A.,N.S., 678; McMillen v. Steele, 1923, 275 Pa. 584, 119 A. 721. In the latter case it was held that while the negligence of the minor himself would be no defense, the defendant could set up the contributory negligence of an injured adult. This clearly indicates the policy found in the statute.
[5] Restatement of the Law  Torts, § 483. See also Handbook of the Law of Torts, William L. Prosser, 2nd Ed. 1955, p. 289; 171 A.L.R. 895; and 20 A.L.R.2d 119.