ERVIN, Justice
(dissenting).
We were requested to review by writ of certiorari the decision of the District Court of Appeal, First District, in this cause which is reported in 182 So.2d 460.
From the record thereof it appears: Respondent H. H. Humphrey, as plaintiff, sued Petitioner, Mrs. Cora Jones Gandy, as a defendant along with two other defendants, viz., Otho Wayne Smith and William Cecil Lewis. The complaint alleges that on May 15, 1962 at about 6:20 P.M. on State Road 61 some 2.9 miles north of Tallahassee, Florida, a motor vehicle (tractor-trailer combination) owned by defendant Otho Wayne Smith and being operated by defendant William Cecil Lewis was so negligently operated as to cause it to collide with an automobile (a school bus) being operated by plaintiff H. H. Humphrey. At about the same place and time immediately prior to the above described collision, a third vehicle (a Lincoln Automobile) was So negligently operated by the defendant Gandy as to be the proximate cause of said collision. A more definite statement of the collision was filed by plaintiff which reads as follows:
“1. The GANDY vehicle, the SMITH-owned vehicle, and the bus being driven by plaintiff were all being operated in a northerly direction on State Road No. 61 about 2.9 miles north of Tallahassee at the said time and place alleged in the Complaint. The GANDY vehicle was in front, the SMITH-owned vehicle was second, and the plaintiff-driver’s bus was in the rear.
“2. At the foregoing said time and place the GANDY vehicle made a sudden and abrupt change of position on the highway without proper traffic signal, as she apparently suddenly stopped on the highway to make a right turn off of the highway.
“3. The negligence alleged is that the defendant GANDY failed to exercise proper care and/or give proper traffic signal for changing her positon on the highway, which directly and proximately resulted in the collision of the two (2) vehicles which were following her on the highway as aforesaid.”
The defendant Gandy answered the complaint and her answer reads in part:
“3. Defendant Gandy says that prior to the aforesaid collision she was operating a Lincoln sedan north on the same State Road 61, commonly known as the Thomasville highway, to a private driveway, into which said defendant made a *538 right turn, and defendant Gandy says she was without knowledge of the collision to the rear and south of her between the Ford bus and tractor-trailer unit until after the same had occurred. Defendant Gandy says that the automobile operated by her was not involved in the accident. Defendant denies that the vehicle driven by her was operated negligently or that the collision and damages alleged in the complaint resulted from any negligence for which this defendant is responsible.”
A verdict in favor of the plaintiff was entered as follows:
“We, the jury, find in favor of the plaintiff, H. H. Humphrey and against the defendant Cora Jones Gandy, and assess plaintiff’s damages in the sum of $98,770.
“We find the defendants Otho Wayne Smith and William Cecil Lewis, not guilty.
“So say we all.”
The record of the cause reflects an amended motion for new trial was timely filed after the verdict, which motion was denied. From said motion the following appears, inter alia:
“9. The Court erred in refusing to give this defendant’s requested charge No. 1 as follows:
“I charge you that when two or more vehicles are being driven along a public road in the same direction, the driver of the front car owes no duty to the rear vehicles except to use the road in the usual way, and until he has been made aware of it, by signal or otherwise, he may assume either that there is no other automobile in his rear, or that, being there, it is under such control as not to interfere with his free use of the road in any lawful manner.
“Gosma v. Adams, 102 Fla. 305 ‘Syllabus of the Court’ 135 So. 806 78 A.L.R. 1193”
and
“14. The Court erred in charging the jury, after the jury had retired to deliberate on a verdict and returned into court for further instruction from the Court in reference to the Florida Statutes in connection with negligence or contributing negligence in the statutes section, as follows:
“ ‘I’ll give you my charge on statutes and rules of the road again. I’ll give you all that charge again relative to statutes and rules of the road. There are certain well recognized rules of the road applicable to the operation of motor vehicles, some of which rules I will give you. The first is that every operator of a motor vehicle is charged in law with the knowledge that he has under his control a dangerous instrumentality and it is his duty to recognize that fact and observe the road around him both behind, and in front of him and what is going on. It’s the duty of the operator of the vehicle to use reasonable care for the safety of others and for the safety of himself on the highway.’ * * * ” (e.a.)
On appeal from the trial court’s judgment which followed the verdict, the District Court of Appeal found no error in the denial of the motion for new trial, which denial was assigned as error. It cited Haislet v. Crowley (Fla.App.1964), 170 So.2d 88.
It appears from the essential factual issues of this cause which are reflected in the record of the complaint and answer, the defendant Gandy, Petitioner here, was entitled to have her request granted for the giving of the first quoted instruction, the same being directly drawn from the holding in Gosma v. Adams, 102 Fla. 305, 135 So. 806, 78 A.L.R. 1193. Moreover, the refusal to give said charge coupled with the giving of the charge in item 14 of the amended motion for new trial creates a conflict with the case cited by the District Court in its opinion, viz., Haislet v. Crowley, supra. In that case the Second District Court held it was error to charge a jury
*539 « * * * ^at a motorist is not allowed to make a sudden stop without first ascertaining that such stop can be made with reasonable safety to other users of the highway * * * in view of the fact a leading motorist does not have a duty to following motorists to ascertain that a stop can be made with reasonable safety, but merely has a duty to give an appropriate signal. * * * ” (page 92)
Not only did the trial judge in this case refuse to give the charge requested on this point, the language of which was drawn from the Gosma v. Adams case, but he compounded the error by charging that a motorist has a duty to observe
“ * * * the road around him both behind, and in front of him and what is going on. It’s the duty of the operator of the vehicle to use reasonable care for the safety of others and for the safety of himself on the highway.” (Emphasis supplied.)
It is noted that at the trial Petitioner failed to object to the giving of the instruction quoted herein from paragraph 14 of the amended motion for new trial. Admittedly such a failure would ordinarily preclude an assignment of error thereon and review by the appellate court. However, because the critical evidentiary issue of this case was the question of reciprocal duties of the leading motorist and following motorists, i.e., what was the duty of the leading motorist to the following motorists under applicable law, I think the error in giving the instruction so material and fundamental as to warrant review. See Jones v. State, Fla.App., 187 So.2d 915; Hamilton v. State, Fla.App., 152 So.2d 793, and Forceier v. State, Fla.App., 133 So.2d 336. However, the Petitioner did object to the trial court’s refusal to give the charge quoted in paragraph 9 of the amended motion for new trial, which charge is a correct rule of law respecting leading and following motorists and is the converse of the instruction given as quoted in paragraph 14 of the amended motion for new trial.
In view of the essential issue of the instant case, viz., that the collision occurred because of negligent operation of the leading vehicle, much more importance should have been given by the trial judge to the request to instruct the jury that Mrs. Gandy’s duty was no greater than that indicated in Gosma v. Adams and Haislet v. Crowley (4th headnote), supra, to following motorists.
The requested instruction is a fair statement of the applicable law governing the reciprocal rights and duties of two or more motorists who are driving along a public road in the same direction. It is hard to see how the jury could intelligently reach its verdict in this particular case unless this important standard rule of the road was brought to its attention. Such an instruction goes to the crux of the precise and critical issue of this case; without it the possibility of an erroneous verdict is quite apparent. The decision of the District Court in refusing to find error in the denial of the amended motion for new trial in which the requested instruction is recited, though patent in the record, results in harmful conflict with the Gosma v. Adams case which manifest justice requires us to notice and correct.
Having found conflict, I read the record of testimony. Briefly, the three drivers of the motor vehicles involved in the collision testified substantially as follows:
H. H. Humphrey, driver of the school bus, testified that the sun was still shining when the collision occurred. He was 150 feet or more behind the tractor-trailer, travelling around forty to forty-five miles an hour. The collision occurred in a no passing zone. He saw the tractor-trailer stopping suddenly. He said he hit his brakes as hard as he could and tried to stop but saw he couldn’t. He said he saw no brake lights or turn indicators on the tractor-trailer, that if the brake lights came on they came on right when the tractor-trailer stopped. He whipped the bus to the right and collided with the rear of the tractor- *540 trailer. He said he was dragging his brakes when he hit. He said he did not see the Lincoln driven by Mrs. Gandy. He reiterated he saw no sign or warning indicating he should stop and was not anticipating a sudden stop.
Mrs. Gandy, driver of the Lincoln automobile, testified the day was clear and bright and she was travelling about forty miles an hour. She was aware there were motor vehicles following behind her but did not remember noting specifically the tractor-trailer. She was taking her daughter to a friend’s home. She missed the friend’s house by passing it and turned to the right into a private driveway in order to turn around. She said she thought the driveway was a private road. She said she gave a right hand blinker signal for about 150 feet before she made the right turn off the highway pavement, slowing down to about thirty miles per hour when she turned on the blinker. Her car was not struck by the tractor-trailer. She said she was off the highway when she heard the crash of the collision between the motor vehicles following her.
William C. Lewis, driver of the tractor-trailer, testified the first time he became aware of the Lincoln driven by Mrs. Gandy was when the Lincoln’s brake lights came on. He estimated he was driving two to three hundred feet behind Mrs. Gandy’s car when he saw her two brake lights go on. He also estimated the Lincoln’s speed at that time was forty to forty-five miles an hour. He testified the Lincoln was 150 feet from the driveway where it turned when its brake lights came on. He saw no turn indication on the Lincoln car. He testified he missed hitting the Lincoln by less than a foot as he passed it while it was turning off the highway. He said Mrs. Gandy was moving very slowly to the right off the highway when he missed her. He said that when he saw the Lincoln’s brake lights go on he applied braking, but not full braking power; that “It was not a panic stop. I merely was applying braking power as I needed it to avoid hitting her car and also give traffic behind me a chance to stop.” He estimated his tractor-trailer travelled down to the point of impact around 375 feet from the point he first saw her brakes come on. He said Mrs. Gandy had completed her turn at the point of impact.
There was other testimony but the testimony from the three persons mentioned above was the most important and decisive. It is recited in this opinion to further demonstrate the prejudicial effect of refusing to instruct the jury as Petitioner requested while giving the instruction recited in item 14 of the amended motion for new trial.
In sum, review of the record reveals the trial judge, with the District Court affirming, departed from controlling precedents vital to a proper jury determination of the cause. On the negative side, the trial judge refused to give the requested instruction which would have delineated to the jury the ordinary duty of a leading motorist to following motorists. On the affirmative side, the trial judge erroneously gave the jury, when it re-entered the court room requesting further instruction, the impression every motorist has the duty to observe the road behind him “and what is going on.” Coupled with such instruction, which unquestionably means that if a motorist is in the lead he should observe following motorists and traffic conditions behind him, was an instruction that such motorist has a duty to use reasonable care for the safety of others, which would include following motorists. The latter instruction would not have been erroneous standing alone, but given in context with the instruction that the leading motorist should observe traffic conditions behind him, it is prejudicial and well may have caused the jury to exaggerate Mrs. Gandy’s duty to following motorists. It overlooked that controlling precedents require no more of a leading motorist concerning following motorists when desiring to stop or turn than that he give an appropriate and timely signal therefor. He has no legal duty, unless properly made aware thereof (which was not the situation here), to take into account whether others *541 are following him too closely or to consider whether their particular vehicles can stop without striking him. If he is complying with the rules of the road and wishes to stop or turn he is not required to assume any of the legal responsibilities of following motorists but is only required to give an appropriate signal. As was said in Haislet v. Crowley, “a leading motorist does not have a duty to following motorists to ascertain that a stop can be made with reasonable safety, but merely has a duty to give an appropriate signal.”
Under the circumstances related, it appears to me the ends of justice would be best served in this cause, if it were re-tried.
CALDWELL, J., concurs.